137 U.S. 654
 11 S.Ct. 231
 34 L.Ed. 822
 EGAN
v.
CLASBEY.
 January 19, 1891.
 
 This was an action at law, brought in one of the territorial courts of Utah territory, by Edward D. Egan against James T. Clasbey, to recover the value of 1,475 shares of stock of the Bannock Gold & Silver Mining Company, a corporation organized under the laws of that territory, which, it was alleged, had been received by the defendant, in excess of the number to which he was entitled, under the following agreement:
 'Salt Lake City, 11th Sept., 1885. This agreement, entered into on this, the eleventh day of September, 1885, by and between Ed. D. Egan, party of the first part, and James T. Clasbey, party of the second part, and both of Salt Lake City and county, Utah territory: That said Ed. D. Egan, party of the first part, does hereby agree to deliver to James T. Clasbey, party of the second part. stock in the mining claim at prsen t known as 'Martin's Horn Silver Mine,' and situated near Lava Beds, Idaho territory; the amount of said stock to be of the value of five thousand ($5,000) dollars, at its original cost; and it is further agreed that if said stock is not issued the said Ed. D. Egan, party of the first part, does agree to deliver to said James T. Clasbey, party of the second part, a deed for a portion of the aforesaid mining property, said deed to be equivalent to stock of the amount of five thousand ($5,000) dollars. E. D. EGAN. J. T. CLASBEY. Witness: H. J. LOVE.'
 '$5,000. Salt Lake City, 11th Sept., 1885. Received of James T. Clasbey the sum of five thousand ($5,000) dollars. This sum is in payment for the stock or deed mentioned in an agreement signed by me this day. E. D. EGAN.'
 The complaint alleged that on the 15th of September, 1885, said corporation was formed, as contemplated, between the owners of the other three-fourths of said mine, and the plaintiff and defendant as the owners of the remaining one-fourth; that the amount of the capital of said corporation was $10,000,000, divided in to 100,000 shares of the face or par value of $100 each, making one-fourth interest in said mining property represent 25,000 shares; that the original cost of said stock was 62 1/2 cents per share, being $62,500 in the aggregate for such entire stock; that plaintiff was entitled under said agreement to 17,000 shares of such stock, and the defendant to 8,000 shares thereof, being together one-fourth of the entire stock, and it being agreed by the two parties that such was the const and proper division between them of such stock; but that in the articles of incorporation, by a mistake and inadvertence on the part of the draughtsman of the instrument, 15,000 shares were erroneously set down as subscribed by plaintiff, Egan, and 10,000 shares by defendant, Clasbey; that after said instrument was read to plaintiff he refused to sign the same as written on account of the mistake therein, but upon the distinct agreement and understanding between defendant and plaintiff that the mistake should be corrected, as between themselves, so that plaintiff should receive 17,000 and defendant only 8,000 shares of stock, the plaintiff, in consideration of the defendant's promise to turn over to him 2,000 shares of the 10,000 so allotted to him, signed said articles, and the stock was issued according to the terms of the articles of incorporation as executed; and that afterwards defendant did turn over to plaintiff 525 shares of said excess, leaving a balance of 1,475 shares, which the defendant retained, and refused to turn over, and still refuses, although the plaintiff has demanded the same of him. The plaintiff further averred the value of the stock to be $3 per share at the date of the suit, and asked judgment against the defendant for $4,425, 'with interest from the date hereof, at the rate of ten per cent. per annum.'
 The defendant denied on his part the making of any agreement with the plaintiff other than that first set forth in the complaint. He further denied that the original cost of said mining property, or of its equivalent, the capitalized stock, was $62,500, and averred that it was only $50,000. He denied that he ever agreed that such was the cost of said stock, and that the proper division thereof was as stated in the complaint. He denied that there was any mistake in drafting said articles of incorporation, or that there was any agreement between himself and plaintiff to transfer any portion of the stock allotted to him in said articles to plaintiff, and a verred that at the time of making said contract plaintiff held an option to purchase one-fourth of said mining property, but that, being without means to perfect on his part the purchase under said option, plaintiff applied to defendant to contribute $5,000 to the purchase thereof, with the understanding that the defendant should share in such purchase in such proportion as the $5,000 should bear to the cost of such purchase, and thereupn h e paid plaintiff the $5,000, and said contract of September 11, 1885, was executed; that thereupon the plaintiff perfected said purchase, and at once thereafter said corporation was formed, but that defendant did not then know the actual cost of said property, or of such stock, and no agreement as to any definite number of shares had been made between them; that afterwards, and before defendant was aware of the cost of said property or of such stock, he delivered to the plaintiff 525 shares of said stock, not as a conceded right, or in settlement of any claim of plaintiff, but at plaintiff's request, in order to enable him to fulfill contracts of sale made by him; that after learning that the actual original cost of said property and stock was only $50,000, and that he, defendant, under his contract, was entitled to have 10,000 shares, and that plaintiff was entitled to 15,000 shares, he demanded of plaintiff 525 shares of stock, which plaintiff refused, and claimed that the original cost was 62 1/2 cents per share; that the claim of plaintiff is unjust; that the defendant is entitled to 525 shares, which plaintiff has converted to his own use; that the stock is worth $3 per share; and he, therefore, prayed judgment against the plaintiff for the sum of $1,575.
 A jury having been waived, the case was tried by the court upon the pleadings and proofs, both oral and documentary. The following findings of fact and conclusions of law by the trial court clearly set forth the material facts in the case: '(1) The plaintiff and defendant, on the 11th day of September, 1885, entered into the written contract exhibited in the complaint, whereby plaintiff, in consideration of the sum of $5,000, then delivered to him by the defendant towards the purchase of one-fourth undivided of the Martin's Horn silver mine, at Era, Idaho, agreed to deliver to the defendant stock in such mining claim in amount equal to $5,000, at its original cost; and, further, that if such stock was not issued, he would deliver to defendant a deed to be equivalent to stock of the amount of $5,000. (2) Plaintiff and others bought an option on said mine, paying therefor $6,000, from one Chambers, [such price includeing $5,000 paid by Chambers to Martin, the owner of the mine, on said option, and $1,000, expenses incurred by Chambers,] and on the 12th of September, 1885, paid to Martin $50,000, the balance of the purchase money. (3) On the 15th of September, 1885, a corporation was organized by the purchasers and others associated with them to work said mine, called the 'Bannock Gold and Silver Mining Company of Idaho,' on a basis of 100,000 shares of capital stock, one-fourth of which [25,000 shares] were to be allotted to plaintiff and defendant, to be divided between them according to their said contract. (4) Plaintiff contributed one-fourth of the $6,000 paid to Chambers and one-fourth of the $50,000 paid to Martin, using, with his own money, the said $5,000 delivered to him by defendant. (5) On the organization of the corporation the mine was conveyed to it, and plaintiff and four other corporators voluntarily loaned and advanced to the corporation $2,000, of which sum the plaintiff contributed $500. (6) Soon after the organization of the corporation, by consent, and on motion of the plaintiff, the corporation assumed and paid a debt of $5,000 to one McMasters, which had been incurred by plaintiff and one Thum, the original holders of said option, and afterwards the corporation paid a claim forlabor on the mine pending the option, which claim was estimated at $1,500, but the amount actually paid thereon to Martin was $2,127, paid by the corporation through plaintiff, its superintendent. The corporation also, in November, 1885, out of its net earnings, refunded to the contributors the $6,000 paid to Chambers, and the $2,000 advanced as aforesaid, of which the plaintiff received $2,000, the portion advanced by him. The advances and loan thus repaid and debts assumed and paid by the corpoati on amount to $14,127, leaving the sum of $50,000 as the actual butlay by plaintiff and the other purchasers of the mine. (7) Of the $50,000 so paid by the purchasers the plaintiff paid one fourth, or $12,500, [using for that purpose the $5,000 delivered to him by defendant.] (8) The actual original cost of the 25,000 shares of stock was fifty cents per share. (9) When the corporation was about to be organized, the plaintiff claimed that the cost of stock was 62 1/2 cents per share, and that he was entitled to subscribe for and hold 17,000 shares, and the defendant only 8,000 shares, but there was no agreement or settlement between defendant and plaintiff as to the claim, and the matter was left for future adjustment by plaintiff and defendant. (10) About the month of December, 1885, defendant, at request of plaintiff, delivered to plaintiff 500 shares of stock to enable the latter to fill a sale, and 25 shares which plaintiff desired to give to another person. This stock was delivered to plaintiff subject to the adjustment of their stock account. (11) The parties never agreed upon the cost of the stock. Plaintiff demanded 1,475 shares of stock from defendant, but defendant refused to comply, and plaintiff brought this action. After this, and before answering, defendant demanded of plaintiff the return of the 525 shares delivered as aforesaid, which was refused by plaintiff. (12) The value of said stock when the action was brought and when defendant made his said demand was and is now three dollars per share. As conclusions of law the court doth find: (1) That the plaintiff was entitled to subscribe for, and hold, 15,000 shares of said stock, and defendant was entitled to subscribe for, and hold, 10,000 shares; (2) that plaintiff is not entitled to recover in this action, but the defendant is entitled to judgment against the plaintiff; (3) that on his counter-claim the defendant is entitled to recover from the plaintiff the value of 525 shares of said stock, viz., $1,575, together with his costs to be taxed.' Judgment was accordingly entered in favor of the defendant for the sum of $1,575. That judgment having been affirmed by the supreme court of the territory of Utah, the present appeal was prosecuted.
 J. L. Rawlins, for appellant.
 Samuel A. Merritt, for appellee.
 Mr. Justice LAMAR, after stating the facts as above, delivered the opinion of the court.
 
 
 1
 We find no exceptions in the record, and the only error assigned is that the court erred in not giving judgment in favor of the plaintiff, as a necessary legal conclusion from the findings of fact, the pleadings, and the proper interpretation of the contract sued on. We think the findings of fact conclusively negative this contention. It seems that both parties agree, (and it is the only point on which they are agreed,) that according to the terms of the contract of the 11th of September, 1885, the share of Clasbey, the defendant, in the 25,000 shares of stock in the mining corporation was to be determined by the original cost of that stock. In other words, that if it was 62 1/2 cents per share, Clasbey was entitled to a subscription of only 8,000 shares, and the plaintiff Egan to 17,000, in which case the allotment to Clasbey in the articles of incorporation was put there by the mistake and inadvert ence of the draughtsman, and subject to correction in a future adjustment between those two parties; but if it was 50 cents a share, then the defendant Clasbey was entitled to 10,000 shares and the plaintiff to 15,000 shares, in which case the defendant was under no obligation, in any future adjustment of stock between them, to turn over any part of his said shares to plaintiff. The decisive question, therefore, to be determined is, what was the original cost of the 25,000 shares that, under the contract, were to be divided between the parties to this suit? The eighth finding of fact says: 'The actual original cost of the 25,000 shares was fifty cents per share.' This, in our opinion,is absolutely conclusive against the claim of the plaintiff. Such a finding cannot be twisted and turned into a conclusion of law. Nor do we consider as well taken the proposition of counsel for the appellant, that as a finding of fact it is inconsistent, in effect, with the other findings, respecting the original cost of either the mining property of its equivalent, the capitalized stock of the company. It is insisted that these findings show that, in addition to the original price of $50,000, the plaintiff, with other members of the company, advanced divers sums that increased the amount upwards of $62,000. The reply to this is that the findings of fact show that those sums were advances and loans made to the corporation, were treated as such by the plaintiff and those who contributed with him, and were refunded to them out of the net earnings of said corporation, leaving the sum of $50,000 as the actual outlay by plaintiff and the others purchasers of the mine. They cannot, therefore, be included in the estimate of the original cost as between the two parties to this suit.
 
 
 2
 Equally conclusive, in our opinion, is the tenth finding of facts, taken in connection with the eighth, upon the question of the defendant's counter-claim. It appears from that finding that the defendant, at the request of the plaintiff, delivered to plaintiff 500 shares of stock to enable the latter to fill a sale, and 25 shares which the plaintiff desired to give to another person. This stock was delivered to plaintiff, subject to the adjustment of their stock account. We think the pleadings and findings in this case fully sustain the judgment of the supreme court of Utah territory, and it is, therefore, affirmed.